**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT LEE, | : | CIVIL ACTION NO. 3:02CV2214(AWT) |
| *Plaintiff* | : | |
| | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF MOTOR | : | |
| VEHICLES, ET AL., | : | JANUARY 26, 2005 |
| *Defendants* | | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants in the

captioned matter, State of Connecticut, Department of Motor Vehicles and Dale A. Ursin,

respectfully move for summary judgment.  As demonstrated below, the defendants are entitled to

summary judgment because plaintiff's allegations of disparate treatment discrimination and

retaliation fail to state legally cognizable claims under Title VII.  Similarly, plaintiff's Fourteenth

Amendment Equal Protection claims against the defendant Ursin are devoid of merit.  Moreover,

the defendant Ursin is entitled to qualified immunity under these claims in any case.  For all the

reasons discussed more fully below, defendants' Motion for Summary Judgment should be

granted.

## II.    BACKGROUND AND FACTS

The detailed facts of this case are fully set forth in Defendants' Local Rule 56(a)(1)

Statement.  For the purposes of this Memorandum, the Defendants will simply highlight here the

salient facts to provide an overview.

Plaintiff, a former State of Connecticut Department of Motor Vehicles ("DMV") Management Analyst, brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq and 42 U.S.C. § 1983, claiming that he was discriminated against on account of his race (African American) by reason of disparate treatment when he was terminated from DMV's employ in January of 2000. Plaintiff also claims that he was retaliated against in violation of Title VII for his prior opposition to discriminatory conduct.

 Plaintiff's Third Amended Complaint, dated December 3, 2003, is in four Counts or "Claims." The first two "claims" are directed against DMV, plaintiff's employer, for discrimination and retaliation, allegedly in violation of Tile VII. The third and fourth "claims" are directed against the defendant Dale Ursin, the former DMV Human Resources director, in his individual capacity. Claim three purportedly sets forth an equal protection violation for intentional discrimination. Claim four purportedly sets forth an "Olech" equal protection claim.[1]

Plaintiff was terminated from his DMV employment in January of 2000 after a DMV investigation into a faxed complaint from a member of the public (later identified to be plaintiff's former girlfriend). The complainant stated that plaintiff had harassed and physically threatened her and her co-workers at Rensselaer in Hartford. The DMV immediately undertook an investigation which disclosed that plaintiff had used state owned telephones and equipment in the course of making verbal physical threats while on state time. Approximately four months previous to the allegations of threatening, an Executive Order had been issued by then Governor Rowland articulating the state's zero tolerance policy for any type of violence in the workplace. The Executive Order followed the Lottery shootings tragedy in 1998.

---

[1] Jose O. Salinas, former Commissioner of the Connecticut Department of Motor Vehicles, was originally named a defendant in this action as well. Commissioner Salinas was dropped as a defendant in response to defendants' Motion to Dismiss dated October 20, 2003. (Dkt. #11).

After reviewing the investigative findings with Commissioner Salinas, defendant Ursin was directed to conduct a "Loudermill" meeting which was attended by plaintiff with his representatives. The meeting convened initially on January 5, 2000 and was recessed to afford plaintiff added time to present information in his defense. When the second Loudermill meeting convened on January 10, 2000, plaintiff advised DMV that he opted not to provide any further information. Thereupon, a recommendation was made to then Commissioner Salinas that plaintiff be terminated for making threats against members of the public by means of state owned equipment while on state time in violation of the policy and harassment of members of the public.

The recommendation for termination was adopted by the Commissioner. Plaintiff thereafter grieved the termination pursuant to his collective bargaining agreement. An arbitrator ultimately issued a Finding and Award reducing the termination to a sixty (60) day suspension. Plaintiff returned to work in his former classification of Management Analyst 2 in May of 2001. Changed circumstances and reorganization required his re-location and reassignment to DMV's Waterbury office. Thereafter, plaintiff, whose Management Analyst classification had been previously earmarked for elimination by the State, was laid off in the state-wide reduction in force which occurred during the fiscal crisis of 2002-2003.

Plaintiff claims that his termination in January of 2000 was discriminatory on account of his race. The Commission on Human Rights and Opportunities ("CHRO") has previously found plaintiff's claims to be devoid of merit.

III.    **ARGUMENT**

A.    **STANDARD OF REVIEW**

Under Rule 56(c) summary judgment shall be granted to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. See Gallo v Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden has been met, in order to avoid the motion being granted, the non-moving party must come forward with specific facts showing that a genuine issue of material fact exists for trial. See Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993). A factual issue is material if its resolution could affect the outcome of the dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); Converse v. General Motors Corp., 893 F.2d 513, 514 (2d Cir. 1990). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. See Securities Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).

The Court's role is to determine whether issues exist to be tried, not to try issues of fact. See Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). The court must review the evidence in the light most favorable to the non-moving party, and draw all factual inferences in that party's favor. See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir. 1994 **);** Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988). Summary judgment is improper

if there is any evidence in the record  from which a fair inference may be drawn on a material

issue of fact in favor of the party opposing the motion.  See Chambers v. TRM Copy Centers

Corp., 43 F.3d 29, 37 (2d Cir. 1994).  Mere conclusory allegations, however, will not satisfy the

opposing party's burden. See Meiri v. Dacon,  759 F.2d 989, 998 (2d Cir. 1985) ("conclusory

allegations of discrimination are insufficient to satisfy the requirements of Rule 56"). Summary

judgment may be granted when no reasonable trier of fact could find in favor of  the non-moving

party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed.

2d 538, 106 S. Ct. 1348 (1986).  In short, Rule 56 is a tool designed to "winnow out from the

trial calendar those cases whose facts predestine them to result in a directed verdict."  United

National Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 355 (2d Cir. 1993).  "Properly used, summary

judgment permits a court to streamline the process for terminating frivolous claims and to

concentrate its resources on meritorious litigation."  Knight v. U.S. Fire, 804 F.2d 9, 12 (2d Cir.

1986).

###    B.    THE COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING PLAINTIFF'S TITLE VII RACE DISCRIMINATION CLAIM (CLAIM ONE).

Plaintiff contends that DMV discriminated against him because of his race and color by

terminating his employment.[2]  Plaintiff's claim is wholly unmeritorious.

In order to survive summary judgment, plaintiff must establish a prima facie case of

discrimination by a preponderance of the evidence.  See McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973); Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).  Once a

---

[2]    In his complaint dual filed on February 4, 2000 with the CHRO/EEOC, plaintiff claimed he was discriminated against on the basis of his race, color and sex.  See Exhibit 3.  Plaintiff's complaint in this court makes no reference to discrimination based on sex.  At his deposition, plaintiff expressly abandoned any claim of discrimination based on his gender.  Ex. 16, Lee depo. at pp. 166, 167.

prima facie case is established, there is a rebuttable presumption that the employer unlawfully

discriminated against the employee.  Texas Dept. Of Community Affairs v. Burdine, 450 U.S.

248, 254 (1981).  This presumption is established "only because [it is] presumed these acts, if

otherwise unexplained, are more likely than not based on the consideration of impermissible

factors."  Id.  See also, Fisher, 114 F. 3d at 1341-42.  When plaintiff establishes his or her prima

facie case, the burden shifts to the employer to offer a "legitimate, nondiscriminatory reason" for

its employment decision.  Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997) citing St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  "Although the burden of production shifts to the

defendant, the ultimate burden of persuading the trier of fact of intentional discrimination

remains at all times with the plaintiff."  Id.

    If the defendant articulates a nondiscriminatory reason, "the presumption of

discrimination that was raised upon a showing of the prima facie case no longer operates."

Fisher, 114 F. 3d at 1336 (citations omitted).  "Plaintiff must then show that the proffered reason

was pretextual and that, more likely than not, the true reason was the illegal discrimination that

the plaintiff alleged."  Scaria, 117 F. 3d at 654 citing Viola v. Philips Med. Sys. Of North

America, 42 F. 3d 712, 716 (2d Cir. 1994).

    In order to survive a motion for summary judgment, the plaintiff must put forth adequate

evidence to support a rational finding that the nondiscriminatory reasons proffered by the

employer were false, and that more likely than not the employee's race was the real reason

behind the employment decision not to promote the plaintiff.  Viola, 42 F. 3d at 717.  If plaintiff

fails to raise a triable issue of fact as to whether the defendant's offered explanation is pretextual,

summary judgment in favor of defendant is appropriate.  See Holt v. KMI-Continental, Inc., 95

F. 3d 123, 132 (2d Cir. 1996).  Summary judgment is appropriate where the "plaintiff create[s]

only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

The prima facie elements the plaintiff must prove here are that:  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and, (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  Fisher v. Vassar College, 114 F.3d at 1344; see McDonnell Douglas, 411 U.S. at 802.  Plaintiff's inability to make a prima facie case is addressed below.

### 1.    Plaintiff Cannot Meet His Prima Facie Burden On His Claim of Race Discrimination.

Plaintiff cannot meet his prima facie burden.   Although DMV concedes for purposes of this motion that plaintiff is a member of a protected class, that his termination constituted an adverse employment action and that he was qualified for his position, the circumstances underlying plaintiff's termination plainly do not give rise to an inference of discrimination.

Plaintiff must, but cannot, make a showing that he was treated less favorably than other non-minority employees of DMV who engaged in the same type of misconduct.  See e.g., Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64, (2d Cir. 1997) (to make prima facie case, Title VII sex discrimination, plaintiff terminated for violations of policy must show she was treated differently than similarly situated males who fraternized).

Plaintiff has no comparators in this case.  The employees with whom plaintiff compares himself are patently not similarly situated in all material respects.  Plaintiff cannot show that his white employee comparators who were disciplined for misuse of state telephone and equipment engaged in comparable conduct.  Indeed, the record is uncontroverted that plaintiff's conduct

which resulted in his discharge was unprecedented at DMV.  No other employee had utilized

state equipment and time to issue threats of physical harm to members of the public.  Plaintiff

cannot point to any evidence that other DMV employees engaged in similar conduct and were

not terminated.  The CHRO, after extensive investigation, dismissed plaintiff's disparate

treatment claims as lacking any factual support.  See Exhs. 8, 10 and 19.[3]

### 2.    DMV Has Set Forth Legitimate Non-Discriminatory Reasons For Plaintiff's Termination.

Even if plaintiff can somehow overcome his inability to demonstrate a prima facie case,

DMV has satisfied its burden of production in articulating a legitimate, non-discriminatory

reason supporting the plaintiff's termination.  DMV terminated the plaintiff because he

threatened members of the public while in the workplace, utilizing his employer's equipment in

violation of the Governor's zero tolerance policy and DMV's own clearly articulated policy.

Plaintiff's only evidence to support his claim of race discrimination is that he is African

American and was terminated.  Plaintiff can proffer no evidence, save plaintiff's own conclusory

assertions, to counter DMV's legitimate non-discriminatory reasons for terminating plaintiff.

### 3.    Plaintiff Cannot Demonstrate And Prove Pretext.

Plaintiff simply can point to no evidence sufficient to show DMV's decision to terminate

his employment was a pretext for discrimination.  Plaintiff is unable to make the requisite

showing that DMV's articulated, legitimate non-discriminatory reasons are (1) false, and (2) that

more likely than not race discrimination was the real reason for his discharge in January of 2000.

Weinstock v. Columbia University, 224 F.3d 33, 42, 50 (2d Cir. 2000).

---

[3]    All references to exhibits in this memorandum are to the numbered exhibits submitted herewith in
support of Defendants' motion for summary judgment.

There are no material facts tending to show DMV's articulated, legitimate reasons for terminating the plaintiff were false or not honestly believed by DMV at the time of termination. See Roge v. NYP Holdings, Inc 257 F.3d 164, 169 (2d Cir. 2001) (key question is not whether plaintiff actually engaged in threats to the public but rather whether DMV in good faith believed he did). Agugliaro v. Brooks Brothers, Inc., 927 F. Supp. 741 (S.D.N.Y. 1996)("[e]ven assuming defendants were wrong in their belief that plaintiff had engaged in misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender or pension status.")

## C.    PLAINTIFF'S RETALIATION CLAIM MUST BE DISMISSED

"In order to 'establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" Feingold v. State of New York, et al., 366 F.3d 138, 156 (2d Cir. 2004) quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). There is no dispute that termination is a disadvantageous employment action. Plaintiff, therefore, must satisfy the first and third prongs in order to meet his prima facie case of Title VII retaliation. This he cannot do.

### 1.    Plaintiff Cannot Show He Engaged In Protected Activity Prior To His Termination Of Which DMV Was Aware.

Here, plaintiff can point to no evidence in the record that he engaged in protected activity of which DMV was aware before his termination. Plaintiff's claims that his casual conversations in 1997 and 1999 with the defendant Ursin wherein he inferred (sic) that he was being treated differently by his supervisor on account of his race are patently insufficient as "protected

activity" under Title VII.  See <u>Manoharan v. Columbia Univ. College of Physicians & Surgeons</u>, 842 F.2d 590, 594 (2d Cir. 1988) (holding that plaintiff could not have held a reasonable belief that he was protesting discrimination where he "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]").

### 2. In Any Event, Plaintiff Cannot Meet His Burden To Demonstrate A Causal Connection.

A causal connection between a complaint of opposition to discrimination and termination can be satisfied by temporal proximity between the two.  <u>Feingold</u>, 366 F.3d at 156-57. However, in the absence of evidence that the DMV decision maker was at all aware that plaintiff was articulating his opposition to a co-worker's discriminatory act in his conversations with Mr. Ursin, a jury would be forced to speculate about a causal link, something a jury cannot do, especially since it is plaintiff's burden to demonstrate "a causal connection between the protected activity and the adverse employment action."  <u>Feingold</u>, 366 F.3d at 156.

### 3. Even Assuming Arguendo That Plaintiff Can Meet His <u>Prima Facie Burden</u> of Showing Retaliation, DMV Has Articulated A Legitimate Non-Discriminatory Reason For Plaintiff's Discharge.

As set forth above, DMV has clearly articulated legitimate, non-discriminatory reasons for plaintiff's discharge and plaintiff cannot demonstrate that such reasons were pretextual.

### 4. Alternatively, Plaintiff's Retaliation Claim Must Be Dismissed Because That Claim Was Not Made In His CHRO and EEOC Complaint.

It is well established that the federal courts have jurisdiction under Title VII only over claims made in the CHRO/EEOC charge, or claims which are reasonably related thereto.  <u>Smith v. American President Lines, Ltd.</u>, 571 F.2d 102, 107 (2d Cir. 1978).  It is clear that plaintiff never amended his CHRO complaint to plead that his discharge was in retaliation for his

opposition to discriminatory practices.  See, Ex. 10, CHRO Rejection of Reconsideration and

Decision, at p. 6.  Therefore, plaintiff's retaliation claim should be dismissed for failure to

exhaust his administrative remedies.

   **D.    ALTERNATIVELY, PRINCIPLES OF CLAIM AND ISSUE PRECLUSION
           BAR PLAINTIFF'S TITLE VII CLAIMS BECAUSE THE CHRO
           DECIDED THAT HIS TERMINATION WAS NON-DISCRIMINATORY.**

   In Kremer v. Chemical Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883 (1982), the United

States Supreme Court held that, pursuant to the full faith and credit provision of 28 U.S.C. §

1738, a federal court must give "the same preclusive effect to state court judgments that those

judgments would be given in the courts of the state from which the judgments emerged."  Id. at

466.  Accordingly, if under Connecticut law plaintiff would be precluded from re-litigating his

discrimination claim in state court, he cannot pursue a claim in this Court that he was the victim

of discrimination.

   In Connecticut, an adjudicative determination by an administrative tribunal is entitle d to

the same preclusive effect as are judgments of courts.  New England Rehabilitation Hospital of

Hartford, Inc. v. Commission on Hospitals and Health Care, 226 Conn. 120, 129 (1993);

Convalescent Center of Bloomfield , Inc. v. Department of Income Maintenance, 208 Conn. 187,

195 (1988).  Generally, administrative adjudications may preclude future litigation if the parties

have had an adequate opportunity to litigate and to seek court review of adverse findings.

Convalescent Center, 208 Conn. 195 (citations omitted)

   Here, the record reveals extensive and lengthy litigation before the CHRO prior to the

plaintiff's discrimination claims being dismissed in May of 2002 on a Finding of No Reasonable

Cause on the merits.  See Ex. 8.  Courts in this District have previously held that even a CHRO

dismissal on Merit Assessment review pursuant to Conn. Gen. Stat. § 46a-83(b) afforded the

complainant adequate opportunity to litigate so as to support the Court's application of preclusion principles to bar the federal action. Kalanquin v. Heublein, Inc., 1999 U.S. Dist. LEXIS 11798, No. 3:97CV1990(EBB) (D. Conn. June, 1999).[4]

The Kalanquin plaintiff had argued that Connecticut courts would not give preclusive effect to a CHRO MAR dismissal because she did not have the opportunity to fully litigate her discrimination claim. Specifically, Kalanquin argued that the MAR process did not contain the same procedural "characteristics" as adjudication by the District Court. Id., at *8. In Kalanquin, the missing "characteristics" in the MAR process were claimed to be the right to conduct discovery, offer testimony and to call and cross-examine witnesses. Id.

In rejecting these arguments, the Kalanquin Court cited the provisions of Conn. Gen. Stat. § 46a-83(b) which mandate that the CHRO's MAR review encompass "the complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information response." Id. at *9. Furthermore, the Court noted that Conn. Gen. Stat. § 46a-83(d) specifically requires the CHRO to afford complainants the opportunity to respond to all evidence contained in the CHRO's record. Id. at *10.

The Kalanquin plaintiff did file an appeal of the CHRO's MAR dismissal to the Connecticut Superior Court as authorized by Conn. Gen. Stat. § 46a-83 which affirmed the CHRO's decision. Here, the plaintiff did not choose to do so. However, that distinction is of no moment under the Connecticut law of issue preclusion. It is not judicial review and affirmance of the administrative agency decision which is critical to the application of preclusion principles

---

[4]     Copies of unreported cases are included in the Appendix hereto.

in Connecticut – rather it is <u>access</u> to judicial review as a matter of law which is crucial. <u>Convalescent Center of Bloomfield, Inc. v. Dep't of Income Maintenance</u>, 208 Conn. at 195-96. In the case at bar, plaintiff did opt to request reconsideration of the CHRO's decision. That request was rejected by CHRO on December 2, 2002 and no appeal was taken. The right to judicial review of the CHRO's dismissal was clearly afforded plaintiff by statute.[5]

In the present case, the case for preclusion is even more compelling than in <u>Kalanquin</u>. Unlike the <u>Kalanquin</u> plaintiff, Lee was afforded by CHRO an investigative fact finding proceeding where he was able to confront witnesses, introduce evidence in support of his discrimination claims and, through the Investigator, conduct discovery.

Even if this Court for some reason declines to follow <u>Kalanquin</u> and afford the CHRO's No Reasonable Cause finding preclusive effect, the Second Circuit Court of Appeals instructs that the CHRO findings must be given substantial weight. In <u>Collins v. New York City Transit Authority</u>, 305 F.3d 113 (2d Cir. 2002), the Court held that a decision of a neutral arbitrator is admissible and would attenuate a plaintiff's proof of the causal link establishing unlawful discrimination. The <u>Collins</u> Court held that after a process by which issues are heard, a decision based on substantial evidence is to be accorded deference unless the plaintiff can show that the agency's decision was wrong as a matter of fact – for example, that new evidence not before the tribunal was available or that the impartiality of the tribunal was compromised. <u>Collins</u>, at pp. 119-120. By logical extension, the same reasoning would apply to the decision of the CHRO finding no unlawful discrimination on plaintiff's complaints.

---

[5]    Conn. Gen. Stat. § 46a-94a provides for an appeal to the Superior Court from the Commission's "rejection of reconsideration of any dismissal as provided in subsection (e) of said section 46a-83" in accordance with the provisions of Conn. Gen. Stat. § 4-183 (Connecticut's Uniform Administrative Procedure Act). Plaintiff did not appeal the CHRO denial of reconsideration by CHRO in December of 2002 to the Superior Court.

In this case, the record more that substantiates CHRO's factual finding.  See Exs. 8, 10, 19.  The plaintiff was represented by counsel for much of the CHRO process.  Plaintiff advanced several legal arguments in opposition to the CHRO's draft summary of no reasonable cause, all of which were rejected largely because of the Respondent's good faith reliance on then available information when the decision to terminate was made and the total lack of proof relative to similarly situated comparators.  See Exs. 8, 10, 19.

> **E.     PLAINTIFF CANNOT PROVE THAT THE DEFENDANT URSIN VIOLATED HIS RIGHT TO EQUAL PROTECTION BY INTENTIONALLY DISCRIMINATING AGAINST HIM ON ACCOUNT OF HIS RACE.  (CLAIM THREE).**

The plaintiff, in Count Three (Claim Three) of his complaint, alleges violation of his right to Equal Protection by the defendant Ursin pursuant to Section 1983.

Plaintiff cannot show a violation of his equal protection rights.[6]  In LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), the United States Court of Appeals for the Second Circuit concluded that, to properly plead a selective treatment equal protection cause of action, a plaintiff must show that:

> (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith.

Id. at 609.  See, e.g. Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001); Trieste Rest. v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999); Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).  The

---

[6]     In failing to establish a prima facie disparate treatment claim under Title VII, a plaintiff also necessarily fails to meet the purposeful discrimination requirement for a section 1983 violation based on equal protection.  See, Personnel Administrator v. Feeney, 99 S.Ct. 2282 (1979); Washington v. Davis, 96 S.Ct. 2040 (1976).

Second Circuit has been "careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim." A.B.C. Home Furnishings, Inc. v. Town of East Hampton, 964 F. Supp. 697, 702 (E.D.N.Y. 1997); Latrieste Rest. v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999).

## 1. Plaintiff Cannot Prove Selective Treatment.

To satisfy the first prong of a selective treatment equal protection cause of action, a plaintiff must offer evidence that " he was similarly situated to other persons but was nevertheless treated differently," A.B.C. Home Furnishings, 964 F. Supp. at 702 (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 61 (2d Cir. 1985). "To be similarly situated, the individuals with whom the litigant attempts to compare [himself] must be similarly situated in all material respects" and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc. 118 F. 3d 60, 64 (2d Cir. 1997).[7] See also, Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)(noting "[t]he test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent.")

Applying these principles, Plaintiff has plainly failed to raise a genuine issue of material fact as to the first prong of his selective treatment cause of action, i.e., that he compared with others similarly situated, was selectively treated. Shumway v. United Parcel Service, Inc., 118

---

[7]    Shumway discusses the standard for "similarly situated" in the context of Title VII. However, the Second Circuit applies the same Shumway "similarly situated" standard in the context of selective treatment equal protection cases. See e.g. LaTrieste Rest. v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999); Hart v. Westchester City Dept. of Social Services, 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001).

F.3d 60, 64 (2d Cir. 1997).  Although he alleges that he was singled out for more harsh discipline than non-black employees; a review of the record reveals otherwise.

Similarly, plaintiff makes the argument that his discharge was grossly disproportionate to discipline received by other white DMV employees.  However, the record clearly reveals that he was not "similarly situated" to these employees.  The defendant Ursin reasonably believed that plaintiff had made physical threats while using state equipment.

### 2.    Plaintiff Cannot Prove Discriminatory Intent On The Part of The Defendant Ursin.

Even if plaintiff was able to satisfy the first prong of the selective treatment cause of action, he cannot satisfy the second prong and its requirement to prove the defendant's actions were "intentionally motivated" to deprive the plaintiff of his "constitutional rights or to maliciously injure [him]."   See, LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980).  Plaintiff cannot prove any discriminatory intent let alone the even higher standard of malice.

The recently decided case of Bizzarro, et al v. Miranda, et al., Slip Op., Dkt No. 03-9047, January 7, 2005 (2d Cir. 2005) (copy in Appendix) is extremely instructive.  There, the Second Circuit panel held "[t]he branch of equal protection law that protects individuals from unequal treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives'".  Bizzarro, at p. 10 quoting Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995).  Here, the evidence demonstrates that plaintiff's termination was in response to plaintiff's violation of established policy.  "If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to 'get' [someone] for reasons wholly unrelated to any legitimate state objective."  Id.

Clearly, plaintiff's Equal Protection claim in Count Three must fail.

**F.    PLAINTIFF'S "CLASS OF ONE" EQUAL PROTECTION CLAIM MUST ALSO BE DISMISSED (CLAIM FOUR).**

In "Claim Four" of his Third Amended Complaint, plaintiff attempts to set out his "class of one" Equal Protection claim.  Plaintiff again claims that Mr. Ursin intentionally treated him differently from other similarly situated DMV employees and that there was no rational basis for such disparate treatment.  There has been an open question in the Second Circuit whether a "class of one" plaintiff must also show malice or animus.  Harlen Associates v. Village of Mineola, 273 F.3d 494, 500 (2d Cir. 2001).  However, the Court need not reach this question of malicious intent because plaintiff plainly cannot meet either the two other prongs of an Olech claim – (1) differential treatment from those similarly situated and (2) no rational basis for such differential treatment.  Harlen Associates v. Village of Mineola, 273 F.3d at 500.

Defendants refer the Court to the arguments set forth above demonstrating that plaintiff cannot show disparate treatment.  Even if plaintiff could demonstrate such disparate treatment, the record is clear that plaintiff's Olech claim must fail because the recommendation to terminate in the pertinent circumstances was rational and was in furtherance of legitimate state policies concerning violence in the workplace and misuse of state equipment.  The "rational basis" standard is purposely low.  The Second Circuit has held that a governmental actor acts irrationally only when he or she acts "with no legitimate reason for [his or her] decision." Harlen Assocs., 273 F.3d at 500 quoting Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).  Based on the well documented events and investigation leading up to Mr. Lee's termination, no rational jury could conclude that Mr. Ursin lacked any legitimate basis for his termination recommendation.

Once again, the recently decided <u>Bizzarro</u> case is instructive.  The Second Circuit held that "an <u>Olech</u> – type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency.  If a jury could reasonably find that there was no rational basis for the defendants to believe that initiating charges against these plaintiffs could serve the legitimate goals of the [state agency], a claim would lie".  <u>Id</u>. at p. 13.  Here no jury could find that Ursin's recommendation was not rationally related to the legitimate goals of DMV.

Finally, plaintiff's equal protection claims must fail because there is no evidence in the record that Ursin made the decision to terminate.  There clearly was an "intervening cause" leading to plaintiff's termination, that is, Commissioner Salinas' independent decision to terminate.  The state statutes vest Commissioner Salinas with the sole authority and responsibility for such decisions.  See <u>Taylor v. Brentwood Union Free School Dist.</u>, 143 F.3d 679, 687 (2d Cir. 1998)(teacher not liable for reporting complaints against a co-worker where independent decision to discipline was made).

**H.    PLAINTIFF'S SECTION 1983 CLAIMS AGAINST MR. URSIN ARE SUBJECT TO DISMISSAL ON GROUNDS OF QUALIFIED IMMUNITY.**

If the Court finds that the record in connection with plaintiff's claims is insufficient to support equal protection violations pursuant to §1983, then the qualified immunity issue need not be reached.  However, even if the Court should find that plaintiff's §1983 constitutional claims are sufficient to withstand summary judgment, then the defendant Dale Ursin is entitled to the protection of qualified immunity and summary judgment must enter in his favor.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2829 (1985); Giacolone v. Abrams, 850 F.2d 79, 84 (2d Cir. 1988). "The entitlement is an immunity from suit rather than a mere defense to liability . . ." Id. The principal purpose of the doctrine is to enable public officials to do their jobs without fear of subsequently facing liability for actions they could not reasonably have believed violated the law at the time. Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982), and to avoid disruption to effective government counsel by the burdens of litigation. Mitchell v. Forsyth, 105 S. Ct. at 2809. The doctrine of qualified immunity seeks to ensure that conscientious public officials will feel free to discharge their duties unflinchingly and without diversion, that able citizens are not deterred from accepting public office, and that needless expense can be avoided. Harlow, 102 S. Ct. at 2736. The test is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendant's position could have believed that his actions were lawful, in light of clearly established law. Anderson v. Creighton, 483 U.S. 635,107 S. Ct. 3034, 3039 (1987).

The test is a stringent one and requires that there be a very close factual fit between the case under consideration and previous case law establishing the illegality of the action or conduct at issue in order for the law to be characterized as "clearly established." Thus, in determining whether a particular right was clearly established, the Court must first identify the claimed right in a manner suited to the facts and circumstances of the particular case. Anderson, 107 S. Ct. at 3039; Soares v. State of Conn., 8 F.3d 917 (2d Cir. 1993). Then it must examine the case law of the Supreme Court and of the Circuit to determine whether, during the time period in question, the law was so clearly established that a reasonable official would understand that his actions were unlawful. Although the precise action in question need not have been held unlawful to

defeat a claim of qualified immunity, the unlawfulness must be apparent under preexisting law. Anderson, 107 S. Ct. at 3039.

The Court must also decide whether it was clear at the time of the alleged violations of law that an exception did not permit the actions in question. Gittens v. LeFeure, 891 F.2d 38, 42 (2d Cir. 1989). Finally, and perhaps most importantly, even if the court concludes that the law was clearly established, the Court must determine whether it was objectively reasonable for the official to believe that his actions did not violate those rights. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 107 S. Ct. at 3040; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on whether reasonable officials in the position of the defendant could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

The Second Circuit has held that where the underlying §1983 claim requires a showing of intent, as in the claims at issue here, a government official's motive or intent in carrying out the questioned conduct should be considered in the qualified immunity analysis. Musso v. Hourigan, 836 F.2d 736, 742 (2d Cir. 1988).

When the defense of qualified immunity is raised to a §1983 claim that is grounded in a state actor's unconstitutional motive, the federal district courts and Courts of Appeal have been placed in a quandary. "The 'clearly established law' and 'objective reasonableness' facets of current qualified immunity doctrine tug in opposite directions where . . . the 'clearly established law' itself contains a subjective component." Blue v. Koren, 72 F.3d, 1075, 1083 (2d Cir. 1995). These courts, including the Second Circuit, recognize that permitting consideration of motive could eviscerate the protection to which government officials are entitled by qualified immunity.

20

In response, courts have required that a plaintiff present proof of the unconstitutional motive of each defendant, and have imposed on plaintiffs a "heightened standard," requiring plaintiffs to provide particularized evidence of a direct or circumstantial nature that demonstrates the required state of mind in order to avoid summary judgment on the defense of qualified immunity.[8]  Blue v. Koren, 72 F.3d at 1084.  ("[T]he plaintiff must proffer particularized evidence of direct or circumstantial facts as suggested in Justice Kennedy's concurrence in Siegert v. Gilley,  500 U.S. 226, 111 S.Ct. 1789, 1795 (1991) supporting the claim of an improper motive in order to avoid summary judgment.")  Particularized evidence of improper motive includes expressions by the state officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.  Blue, 72 F.3d at 1084.  In this matter, the record is bereft of any such evidence.

In  Blue v. Koren, the Second Circuit articulated that the following framework should be used when a motion for summary judgment is based upon the ground of qualified official immunity:

---

[8]    The "heightened standard" required by the Second Circuit is different from the "heightened standard" that the D.C. Circuit imposed on plaintiffs in Crawford-El v. Britton, 93 F.3d 813 (D.C. Cir. 1997), which the Supreme Court held was improper.  Crawford-El v. Britton, supra, 118 S.Ct. 1584 (1998).  In Crawford-El, the D.C. Circuit required a prisoner to adduce clear and convincing evidence of improper motive in order to defeat a motion for summary judgment on the ground of qualified immunity, thus, requiring the plaintiff to meet a heightened burden of proof.

The heightened standard "required by the Second Circuit requires the plaintiff to offer specific evidence of unconstitutional motive which "we [the Second Circuit] are doubtful that it imposes a burden greater than is already required under Fed. R. Civ. P. 56…[We] confess considerable doubt as to whether the heightened standard is really heightened or is simply an application of the rule that conclusory assertions are insufficient to defeat a motion for summary judgment."  Blue, supra, 1083-84.  The Second Circuit's approach was impliedly approved by the Supreme Court in Crawford-El, supra.

> [T]he first issue is whether a clearly established right is at stake.  See <u>Siegert</u>, 111 S.Ct. at 1793.  If it is the court must then address whether the conduct was objectively reasonable.  If not, the motion must be denied.  If the conduct was objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment.  The reasonableness of the conduct is itself substantial evidence in support of the motion and requires in response a particularized proffer of evidence of unconstitutional motive.

> <u>Id</u>. at 1084.

While it may be clearly established that the plaintiff as a public employee had rights under the Equal Protection Clause, it is equally clear that Mr. Ursin's conduct was objectively reasonable under the circumstances.  The plaintiff has no credible evidence to suggest that under the circumstances described in the record the decision to terminate plaintiff would violate clearly established law, even if that decision could be attributed to Mr. Ursin.  This is especially so in light of plaintiff's own admissions and non-denials in the Loudermill process.  There is simply no evidence suggesting an "unconstitutional motive" on the part of Mr. Ursin.  As the CHRO's extensive investigation concluded, Mr. Ursin at all times acted reasonably in light of the then available information regarding the allegations of threats and harassment.  See Exs. 8, 10, and 19.  Therefore, if the Court reaches the issue of qualified immunity, Mr. Ursin is entitled to summary judgment.

---

"[F]irm application of the Federal Rules of Civil Procedure is fully warranted and may lead to the prompt disposition of insubstantial claims."  Id. at 1596, quoting <u>Harlow v. Fitzgerald</u> , <u>supra</u>, 102 S.Ct. at 2739, fn. 35).

**IV.**    <u>**CONCLUSION**</u>

For all of the foregoing reasons, summary judgment in Defendants' favor should be granted.

DEFENDANT
STATE OF CONNECTICUT
DEPARTMENT OF MOTOR VEHICLE,
ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:    _____
Edward F. Osswalt
Assistant Attorney General
Federal Bar No.:  ct15252
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel:  (860) 808-5340
Fax: (860) 808-5383
E-Mail:Edward.Osswalt@po.state.ct.us


<u>**CERTIFICATION**</u>

I hereby certify that a copy of the foregoing  Memorandum of Law In Support of

Defendants' Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the

Federal Rules of Civil Procedure on this 26th day of January, 2005,  first class postage prepaid to:

Kimberly A. Graham, Esq.
621 Farmington Avenue
Hartford, CT  06105


_____
Edward F. Osswalt
Assistant Attorney General