FILED

2005 APR 22  P 4: 46

U.S. DISTRICT COURT
HARTFORD CT

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT LEE, | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:02CV2214 (AWT) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPT OF MOTOR VEHICLES, | : | |
| DALE URSIN | : | |
| *Defendants* | : | APRIL 22, 2005 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF HIS OBJECTION TO THE DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

### I. Argument

#### A. <u>Summary Judgment</u>

Summary judgment should be granted by the District Court only when it determines that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986).  In deciding the motion, the trial court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party.  <u>Gallo v. Prudential Residential Servs., Ltd. Partnership</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

1

KIMBERLY A. GRAHAM • ATTORNEY AT LAW, L.L.C.
621 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 523-9306 • FAX (860) 523-1274 • JURIS NO. 413679

The trial court's function at this stage is to identify issues to be tried, not decide them.

Summary judgment is sparingly used where intent and state of mind are at issue, see, <u>Montana v. First Fed. Sav. & Loan Ass'n</u>, 869 F.2d 100, 103 (2d Cir. 1989), because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination. <u>Belfi v. Pendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999), <u>Chertkova v.</u> Connecticut Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996), <u>Chambers v. TRM Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994).

At the same time, the non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor and only when that proof is slight is summary judgment appropriate. <u>Graham v. Long Island Railroad, 230 F.3d 34, 38 (2d Cir. 2000)</u>.

In addition, in employment discrimination cases, "[a] trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue . . . Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers,

2

affidavits and depositions must be carefully scrutinized for circumstantial proof

which, if believed, would show discrimination." <u>Gallo</u> at 1224.

**B.    Summary Judgment Should Be Denied -
Claim is Not Wholly Unmeritorius**

    **1. Prima Facie Case - Race Discrimination**

    To meet the burden of production required for a prima facie case of

discrimination, a plaintiff must show that he (1) is a member of a protected class;

(2) was performing his duties satisfactorily; (3) was discharged; and that (4) his

discharge occurred under circumstances giving rise to an inference of

discrimination on the basis of his membership in the protected class. Plaintiff's

burden to survive a summary judgment motion at the prima facie stage, when

alleging employment discrimination is a minimal one. <u>Graham, supra at 38,</u>

<u>citing, St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506, 125 L.Ed. 2d 407, 113

S.Ct. 2742 (1993); <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1340 n. 7, (2d Cir.

197) (en banc), cert. denied, 522 U.S. 1075, 139 L.Ed. 2d 752, 118 S.Ct. 851

(1998).

KIMBERLY A. GRAHAM • ATTORNEY AT LAW, L.L.C.
621 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 523-9306 • FAX (860) 523-1274 • JURIS NO. 413679

A plaintiff may raise an inference of discrimination by showing that the employer treated him less favorably than a similarly situated employee outside his protected class.  Graham, supra @ 39, citing, International Bhd. Of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 52 L.Ed., 2d 396, 97 S. Ct. 1843 (1977); Norville v. State Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).

Defendants claim that plaintiff's claims are wholly unmeritorious because they allege that the plaintiff cannot meet his burden of establishing a prima facie case of discrimination.  Defendants admit for purposes of this motion that the defendant was a member of a protected class, was qualified for the position he held and that he suffered an adverse employment decision, (i.e.) he was terminated; however, defendants contend that the plaintiff cannot establish that his discharge occurred under circumstances giving rise to discrimination.  More specifically, the defendants contend that the Plaintiff has no similarly situated individuals with whom he can be compared because no other person was terminated for utilizing, "state equipment and time to issue threats of physical harm to members of the public."

First, Plaintiff was not terminated for utilizing state equipment and time to issue threats of physical harm to members of the public.  Plaintiff's letter of termination stated that he was terminated for (1) misuse of state telephones and a

4

computer in violation of established policy, (2) harassing and threatening members of the public in violation of the Governor's Executive Order and Department policies and (3) misuse of state time to conduct personal business. **(Plaintiff's Exhibit L - Letter of Termination, dated 1/10/00)**

All DMV employees were subject to the same Executive Order and Department policies as the Plaintiff herein. The plain language of the Executive Order establishes it was applicable to all state employees and that no violence or threats would be tolerated. The State of Connecticut adopts a statewide zero tolerance policy for workplace violence. **Plaintiff's Exhibit S**. Although Plaintiff's termination letter sites o specific DMV policy it is assumed that any such policy would be applicable to all DMV employees.

However, unlike the Plaintiff, other white DMV employees charged with a first offense of misuse of state equipment were not fired but were issued letters of reprimand or a performance agreement in lieu of suspension or in lieu of termination. **Plaintiff's Exhibit D at (a), 12, and 18.**

White employees who were charged with misuse of the state's computer system and/or computer equipment or misuse of state's resources were issued written reprimands. **Plaintiff's Exhibit K   - Formal Reprimand of Jonathan Roberts, dated, 6/9/00,  Michael Boguslawski and Mark Niglio.**

5

Another white employee with a previous disciplinary history (illegal use of a dealer plate), who was subsequently charged with Misuse of the state telephones (making 71 personal calls to his home or the home of his fiance), was not terminated but received written counseling on February 17, 1994. **Exhibit D and V**.

A white female, Carol Driscoll was alleged to have put her fist directly in the face of another employee but Driscoll was not terminated pursuant to the zero tolerance policy. In fact Driscoll was not even charged with violating the zero tolerance policy. **Plaintiff's Exhibit T.** It should be noted that the same person who determined that there was no need for discipline is the same person who investigated the complaint of the plaintiff. **See plaintiff's Statement of Disputed Facts at paragraph 25.**

It is true that none of the cited comparator employees are alleged to have done exactly what Plaintiff is alleged to have done, however, the issue of whether they are similarly situated to the Plaintiff is ordinarily a question of fact for the jury. Graham v. Long Island Rail Road, 230 F.3d 34, 39, (2d Cir.2000) citing, Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 684 (2d Cir. 1998).

6

Further, the Supreme Court does not require that the comparators be similarly situated in all respects but rather that they be similarly situated in all **material** respects. <u>Shumway</u>, 118 F.3d 60. 64 (2d.Cir. 1997).

"What constitutes 'all material respects' varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words there should be an 'objectively identifiable basis for comparability. . .' [T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." <u>Graham v. Long Island Railroad</u> at 40.

The comparative employees cited by the Plaintiff were all white, DMV employees who were subject to the same Order and policies as the Plaintiff yet none of the comparators were terminated for a first offense and one was not even charged although she violated a zero tolerance policy.

7

## 2. DMV's Legitimate Business Reasons - Pretext

Defendant's legitimate business reasons are not credible in light of the treatment of the persons similarly situated to the plaintiff. Pretext may be demonstrated by reliance on the evidence that established the prima facie case without any additional evidence being required. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.CT 2742, 125 L. Ed. 2d 407 (1993).

Further, although the defendants claim that the plaintiff threatened a member of the public in violation of the Governor's Executive Order and therefore their reasons for termination were legitimate and non-discriminatory, the evidence upon which they relied was also deemed not credible by an independent arbitrator who listened to the testimony of all of the witnesses. **Exhibit M**. If a jury were to disbelieve the witnesses as did the arbitrator in the instant case, they would also question the motives of the defendants in their decision to terminate the plaintiff, particularly in light of the treatment of persons who were similarly situated to the plaintiff.

The Supreme Court has also cautioned, that, although courts must be careful not to second-guess an employer's business judgment that it makes in **good faith**, a plaintiff must be allowed to show that their employer's asserted

8

reasons for discharging were a pretext and that the real reason was discrimination. Hicks at 2752 citing, Gallo v. Prudential Residential Services, Ltd. Partnership,

Further, "proof that the defendant's explanation is unworthy of credence is simply [another] form of circumstantial evidence that is probative of intentional discrimination and it may be quite persuasive ... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.CT. 2097, 2108, 147 L.Ed. 2d 105, 2000 U.S. Lexis 3966 (2000).

## C.    PLAINTIFF'S RETALIATION CLAIM SHOULD NOT BE DISMISSED.

Defendants allege that plaintiff cannot establish that he participated in a protected activity known to the defendant and a causal connection between the protected activity and the adverse employment action.

9

### 1. Protected Activity and Defendant's Knowledge Thereof

To make out a prima facie case of retaliation under Title VII, plaintiff must show: (1) protected participation or opposition under Title VII known by the alleged retaliator; (2) an employment action disadvantaging the person engaged in the protected activity; and (3) a causal connection between the protected activity and the disadvantageous employment action.

Title VII is violated if a retaliatory motive played **a** part in the adverse employment actions even if it was not the **sole** cause, <u>Davis v. State</u> <u>University of New York</u>, 802 F.2d 638,642 (2d Cir. 1986); and if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the discharge. <u>DeCintio</u>, 8212 F.2d @ 116, n.8.

Sixty days prior to his termination, Plaintiff complained of being the subject of disparate treatment when he was intentionally not invited to attend a Business Project Management meeting of which Ursin was the sponsor. **Exhibit H at 10.** Not only was Ursin the sponsor, he was the Plaintiff's supervisor by virtue of the chain of command at the DMV. **Exhibit C**. Ursin fails to appropriately disclose the chain of command in his affidavit as he fails to allege

10

KIMBERLY A. GRAHAM • ATTORNEY AT LAW, L.L.C.
621 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 523-9306 • FAX (860) 523-1274 • JURIS NO. 413679

his position in such chain of command. Rather he chose to allege that Plaintiff was supervised by Stephen Dodge and Dodge was supervised by Micelli but he fails to allege that he, Ursin supervised Micelli. **Exhibit H at Paragraphs 10 - 13**.

Plaintiff contends and the Defendants admit that prior to his termination, plaintiff complained to his supervisor, Dale Ursin that he was being treated differently by not being invited to this BPM meeting along with his other white co-employees and requested an explanation as to the reason for such disparate treatment. **Exhibit J, Exhibit Q and Exhibit H at Paragraph 10-13.**

Defendant also admits that plaintiff was not invited to the meeting but alleges that the, "lack of an invitation to the BPM was due to an oversight . . .". **Exhibit H @ Paragraph 10-13**.

Whether or not the lack of invitation to the Plaintiff is not the issue in this instance because, "[a]n employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived. The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, **including making**

11

**complaints to management**, writing critical letters to customer, protesting against discrimination by industry or society in general and expressing support of co-workers who have filed formal charges." <u>Matima v. Celli</u>, 228 F.3d 68 (Emphasis supplied) (Internal quotations and citations omitted).

Defendants' cite <u>Manoharan v. Columbia Univ. College of Physicians & Surgeons</u>, 842 F.2d 590, 594 (2d Cir. 1988) as authority for the proposition that plaintiff in the instant case did not engage in protected activity; however, the Plaintiff's action in the instant case can be distinguished from the plaintiff in <u>Manoharan</u>. The plaintiff's complaints, in <u>Manoharan</u>, "at the time they were made", were that the employer was not pursuing affirmative action goals in a hiring selection process and the Second Circuit held that, affirmative action in employment practices was not required by Title VII; and, therefore, the employer's failure to follow its own voluntary affirmative action program could not, by itself, constitute an unlawful employment practice within the definition of an "unlawful employment practice" under Title VII.

In the instant case, the plaintiff the sole Black DMV Management Analyst complained to his supervisor, Ursin, that he was being treated differently within

12

his unit by not being invited to the BPM meeting concerning a project of which

he was a co-facilitator. **Exhibit Q - Plaintiff's Addendum to CHRO complaint**

**filed with CHRO on 6/13/00.**  Plaintiff's complaint about disparate treatment

based upon race is a protected activity whereas a complaint about compliance

with the Affirmative Action program is not a protected activity and this case is

therefore distinguished from <u>Manoharan</u>, supra.

Causal connection is established where Plaintiff contends that he made the

complaint approximately 60 days before he was terminated.  **Exhibit J -**

**Plaintiff's complaint, Exhibit Q - Plaintiff's Addendum to CHRO compliant**

**filed on 6/13/00.**

Defendant, Ursin admits that he was the sponsor of the meeting to which

Plaintiff was not invited, that he was aware of the Plaintiff's complaint of

disparate treatment as it was made to him, that there was a close proximity

between the date of the complaint and the adverse employment decision and that

he, Ursin recommended Plaintiff's termination. **Exhibit H - Ursin's affidavit @**

**Paragraphs 10, 44.**

Proof of causal connection can be established indirectly by showing that

the protected activity was followed closely by discriminatory treatment of fellow

13

employees who engage in similar conduct or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.  <u>Decintio v. Westchester County Medical Center</u>, 82 F.2d 111, 115 (2d Cir.), *cert. denied* 484 U.S. 965, 98 L.Ed. 2d 395, 108 S. Ct. 455 (1987), (Internal citations omitted).

### 4. Retaliation Claim – Filing at CHRO Not Required

Under Title VII, Plaintiff need not file his retaliation claim at CHRO where his race discrimination was properly filed and the retaliation claim is reasonably related to the initial race discrimination claim.  <u>Goodman v. Heublein</u>, 645 F.2d 127 (2d Cir.

### D.    PRINCIPLES OF CLAIM AND ISSUE PRECLUSION DO NOT APPLY IN THE INSTANT CASE

Defendants claim that principles of claim and issue preclusion bar plaintiff's Title VII claims because the Commission On Human Rights and Opportunities, an administrative agency decided that the Plaintiff's termination was non-discriminatory. Plaintiff did exhaust his administrative remedies by bringing his complaint to the CHRO; however, there was no appeal the CHRO decision dismissing his claim.

14

University of Tennessee v. Elliott, 478 U.S. 788, 92 L.Ed. 2d 635, 106 S. Ct. 3220 (1986) establishes the basic proposition that [the plaintiff] is entitled to a trial de novo on his Title VII claim, since he did not seek state court review" of the administrative proceedings.  The Supreme Court held that, Congress did not intend that un-reviewed state administrative proceedings would have, have preclusive effect on Title VII claims.  DeCintio v. Westchester County Medical Center, 821 F.2d 111 (2d Cir. 1987).

Although the CHRO made a decision with regard to Plaintiff's claims, their decision has not been reviewed and plaintiff is entitled to a trial de novo of his Title VII claims.

### E.    EQUAL PROTECTION

The Equal Protection Clause protects similarly situated individuals who are selectively treated differently due to a malicious or bad faith intent to injure. This type of equal protection claim is reviewed under rational basis scrutiny.   A decision is considered irrational if the public entity acts with no legitimate reason for its decision. Dicicco v. Voccola, 325 F. Supp. 2d 85 (2003), citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed. 2d 1060 (2000) and Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996).

KIMBERLY A. GRAHAM  •  ATTORNEY AT LAW, L.L.C.
621 FARMINGTON AVENUE • HARTFORD, CT  06105 • (860) 523-9306 • FAX (860) 523-1274 • JURIS NO. 413679

Plaintiff relies on the facts and arguments advanced under his Title VII claim to establish selective treatment by the Defendants in the instant case.

## F. CLASS OF ONE - EQUAL PROTECTION CLAIM

Although noting that this area of equal protection law is murky, with no clear rules to apply, the Second Circuit drew from standards articulated in Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963), U.S. V. Berrios, 501 F.2d 1207 (2d Cir. 1974) and the inquiry outlined in Wood v. Strickland, 420 U.S. 308, 319-20, 95 S.Ct. 992, 999, 43 L.Ed. 2d 214 (1975) to hold that in the instant type of equal protection case, liability should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

The plaintiff has already made out his case of selective treatment based upon race in his Title VII claim.  The plaintiff also believes that he has established a disputed issue of material fact with regard to the malicious or bad faith of the Defendants where other white similarly situated individuals were treated

16

differently, witnesses against the Plaintiff were not deemed to be credible and

where Ursin recommended Plaintiff's termination shortly after Plaintiff

complained of disparate treatment.

PLAINTIFF, VINCENT LEE

BY

KIMBERLY A. GRAHAM,
Attorney at Law, LLC
621 Farmington Avenue
Hartford, CT 06105
(860) 523-9306
Juris No. ctl1920

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing memorandum was mailed

postage prepaid on this 22nd day of April 2005 to:

Edward Osswalt
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Kimberly A. Graham
Commissioner of the Superior Court

KIMBERLY A. GRAHAM  •  ATTORNEY AT LAW, L.L.C.
621 FARMINGTON AVENUE • HARTFORD, CT 06105 • (860) 523-9306 • FAX (860) 523-1274 • JURIS NO. 413679