**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT LEE, | : | CIVIL ACTION NO. 3:02CV2214(AWT) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF MOTOR | : | |
| VEHICLES, ET AL., | : | MAY 18, 2005 |
| *Defendants* | | |

**DEFENDANTS' REPLY MEMORANDUM IN**
**SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Pursuant to Local Rule 7(d), the Defendants in the captioned matter hereby respectfully submit this Reply Memorandum to Plaintiff's Memorandum of Law In Support of His Objection To The Defendants' Motion for Summary Judgment dated April 22, 2005 (hereinafter "Pltf.'s Obj."). Defendants' opening brief and statement of undisputed facts demonstrated that the Plaintiff's claims must fail as a matter of law. The plaintiff's objection papers offer only self-serving, conclusory allegations, conjecture and speculation, together with record citations which in many instances do not support the "facts" plaintiff asserts and, in any event, fail to demonstrate the existence of a material fact which would preclude granting the Defendants' Motion for Summary Judgment.[1]

---

[1]  Plaintiff has submitted "Plaintiff's Local Rule 56(a)(1) Statement of Disputed Material Facts" dated April 22, 2005, which, in and of itself, represents a departure from summary judgment procedural orthodoxy. See, e.g., ¶¶ 5, 25, 38, 51-54, and 63 in plaintiff's "Statement" for examples of plaintiff's self-serving, conclusory assertions unaccompanied by any citation whatsoever to record evidence, let alone admissible evidence. In addition, in other instances, the plaintiff responds to defendants' facts by

1

Plaintiff's objection papers are rife with citations to inadmissible evidence, rest upon the same conclusory allegations contained in his Complaint[2] and often blatantly mischaracterize the record facts, all in a transparent attempt to manufacture what is not there – a genuine issue of material fact.  When plaintiff's unsupported and conclusory assertions are stripped away, it becomes abundantly clear that the record before this Court is bereft of any admissible evidence even remotely sufficient to permit a reasonable fact finder to conclude that plaintiff's statutory or constitutional rights have been abridged as alleged.

Suffice it to state here that plaintiff's self-serving, conclusory, factually unsubstantiated and unexplained assertions are inadequate to defeat summary judgment.  See, e.g., Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).  Further, it is axiomatic that the Defendants need not prove a negative when moving for summary judgment on an issue that plaintiff must prove at trial. Gallo v. Prudential Residential Servs., 22 F. F.3d 1219,1223-24, (2d Cir. 1994)("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case.")  The non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his favor.  Anderson v. Liberty Lobby, Inc., 407 U.S. 242, 106 S.Ct. 2505 (1986).

In Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) cert. denied, 530 U.S. 1242 (2000), the Second Circuit reviewed the importance of district courts drawing a distinction

---

adding to them as if pleading matters in avoidance. See, e.g., Pltf.'s Statement at ¶¶ 1, 2, 8, 9, 21, 22, 23, 25, 26, 38 etc..  Such responses are neither authorized nor contemplated by Rule 56(a).

[2]  It is established law that a plaintiff may not rely on mere allegations or denials contained in his pleadings to overcome a motion for summary judgment.  St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000).

between admissible evidence and speculation and conjecture in deciding summary judgment motions in employment discrimination cases:

> [Courts] must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, '[a]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist].' 1 Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 6.01, instr. 6-1 (1997). Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances. Id. at 443.

In the case at bar, the Defendants have demonstrated the absence of admissible evidence supporting the essential elements of plaintiff's claims and are, therefore, entitled to judgment. See, e.g., Goenaga v. March of Dimes, 51 F.3d 14, 18 (2d Cir. 1995).

## II. PLAINTIFF CANNOT PROVE DISCRIMINATION IN CONNECTION WITH HIS TERMINATION IN JANUARY OF 2000.

### A. Plaintiff Has Not – And Cannot – Establish a Prima Facie Case of Discrimination.

As plaintiff concedes, his claim of discriminatory termination is properly analyzed under the McDonnell-Douglas burdenshifting paradigm discussed in Defendants' moving brief. (Pltf.'s Obj. at p. 3). Plaintiff contends that he satisfies the fourth prong of his prima facie case showing, that his termination occurred under circumstances giving rise to an inference of discrimination, because he was treated less favorably than similarly situated employees outside of his protected class. (Pltf.'s Obj. at pp. 4-7). Plaintiff's prima facie Title VII case therefore rests wholly on his claim that he was similarly situated to white employees and received harsher discipline. His evidence in this regard is, however, totally lacking.

When a plaintiff attempts to establish a prima facie case by pointing to more favorable treatment of other employees, "those employees must have a situation sufficiently similar to

3

plaintiff's to support at least a minimal inference that the difference [in] treatment may be due to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).  Moreover, in cases involving disparate treatment with regard to the imposition of discipline, the plaintiff must show that the conduct of the putative comparators was of a comparable level of seriousness.  See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001)(none of plaintiff's comparators also had been late with their reports or failed to provide leadership); Padilla v. Harris, 285 F. Supp. 2d 263, 270 (D. Conn. 2003)(plaintiff's comparator not similarly situated for purpose of establishing prima facie case because conduct less serious);  Hogan v. State of Connecticut Judicial Branch, 220 F. Supp.2d 111, 120 (D. Conn. 2002) (summary judgment granted employer because "[d]ifferent violations of policy warrant different employer responses and they cannot be compared for Title VII purposes unless they are equally serious.")[3]

Here, there is no dispute as to what the plaintiff was charged with or the precise conduct that formed the basis for those charges.  (See Pltf.'s Local Rule 56(a)(1) Statement, ¶¶ 40, 41).  Plaintiff, in fact, had to concede that none of his comparators "are alleged to have done exactly what Plaintiff was alleged to have done . . ."  (Pltf.'s Obj. at p. 6).Accordingly, plaintiff's prima facie case is fatally deficient.  See Norville v. Staten Island University Hosp., 196 F.3d 89, 95-96 (2d Cir. 1999)(affirming District Court's grant of summary judgment where plaintiff produced

---

[3]     In his brief, plaintiff asserts that the issue of whether plaintiff and his comparators are similarly situated is ordinarily a question of fact for the jury. (Pltf.'s Obj. at p. 6, citing Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000)).  However, it is beyond dispute that this "[G]eneral rule, whether [persons] are similarly situated is a factual issue that should be submitted to the jury . . . .  is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met."  Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 499 at n.2 (2d Cir. 2001).  See also, e.g., Cruz v. Coach Stores, 202 F.3d 560, 568 (2d Cir. 2000)(Fact that alleged comparators' conduct was verbal while plaintiff's was physical was "fatal" to plaintiff's disparate treatment claim).

insufficient evidence to show that employer treated similarly situated white employees more favorably). Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) (The plaintiff must establish "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases and their acts must be "comparable seriousness.").

It is undisputed that plaintiff was discharged in January of 2000 because he was found to have committed the following violations: (1) misuse of state telephones and computer; (2) harassing and threatening members of the public in violation of the Governor's Executive Order and DMV policy; and (3) misuse of state time to conduct personal business. Deft.'s Ex. 2G; Pltf.'s Ex. L.

It is therefore perplexing indeed that plaintiff seeks to compare himself with Carol Driscoll (Pltf.'s Obj. at p. 6) who was alleged (**not found**) to have threatened a co-worker. The co-worker's **allegation** of threatening against Driscoll was withdrawn the day after it was made, both parties exchanged apologies and DMV reasonably took no further action. See Pltf.'s Ex. T; Deft.'s Ex. 9.

Plaintiff's other purported comparators, Messrs. Roberts, Boguslawski, Niglio and Peruta were all issued reprimands for misuse of state equipment and/or resources. Pltf.'s Obj. at p. 5; Pltf.'s Statement at ¶ 42. None of these comparators were also charged with or found to have violated the Governor's Executive Order setting forth the statewide policy against threats of violence in the work place as was plaintiff. Finally, it is equally clear that the white employee cited by plaintiff who was found to have illegally used dealer plates in 1985 and then in 1994 was charged with misuse of state telephone, was not "similarly situated" to plaintiff. This employee, Louis Florio, eventually was forced to resign in lieu of dismissal in 1998 on charges

5

of driving while under suspension and improper conduct. Pltf.'s Ex. D, DMV response to Pltf.'s Interr. 12 and 18.

Plaintiff's failure to offer any evidence of direct or indirect racial discrimination is patent. Plaintiff has failed to meet his burden of proving a prima facie case.

### III.     PLAINTIFF HAS FAILED TO OFFER ANY EVIDENCE TO REBUT DMV's LEGITIMATE, NON-DISCRIMINATORY REASONS FOR IMPOSING DISCIPLINE.

The very essence of the plaintiff's Title VII claim is that DMV unlawfully discriminated against him on the basis of his race in imposing disparate disciplinary action against him after the threatening and misuse of state time and equipment findings on January10, 2000. In response to Defendants' summary judgment moving papers, it could reasonably be expected that plaintiff might present some evidence of discriminatory intent or motive. He has not. Once an employer articulates a legitimate non-discriminatory reason for its actions, the plaintiff may only prevail if he can prove by a preponderance of the evidence that "[DMV's] proffered reasons are shown to be a pretext for discrimination." Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998). In order to make this showing, plaintiff must demonstrate "both that the proffered reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742 (1993)(emphasis supplied). The plaintiff has done neither. DMV's reasons for imposing discipline on the plaintiff in January of 2000 were well measured upon all the facts then available and given the unprecedented charges and the Governor's policy just enunciated following the Lottery tragedy. Most importantly, the discipline was non-discriminatory.

6

### IV.     PLAINTIFF'S RETALIATION CLAIM MUST FAIL.

Throughout his brief and in his Rule 56(a) statement, plaintiff embellishes the record, mischaracterizes testimony and exhibits and attempts to pass off argument as fact. One of the more egregious examples of this disturbing penchant for misrepresenting the record is plaintiff's argument in connection with his Title VII retaliation claim. (Pltf.'s Obj. at pp. 10-14). There is simply <u>no</u> <u>record</u> <u>evidence</u> that plaintiff complained of "disparate treatment" when he complained to Mr. Ursin about not being invited to a business project meeting by one of his co-workers. (Pltf.'s Obj. at p.10). There is absolutely <u>no evidence in the record</u> that plaintiff complained to Mr. Ursin about "<u>disparate treatment based upon race</u>." (Pltf.'s Obj. at p. 13).[4] Plaintiff's as "support" for his assertions that he complained to Mr. Ursin about "disparate treatment" are his own complaint and Mr. Ursin's affidavit. The Ursin affidavit fails to support any such assertion. Furthermore, plaintiff cites as additional "support" his "addendum" to his CHRO complaint which was filed in June of 2000, six months after his termination and four months following his original CHRO complaint.[5] Respectfully, it appears that plaintiff may have manufactured his belief concerning the content of his conversation with Mr. Ursin for litigation purposes after the fact.

Plaintiff himself testified at his deposition that he complained to Ursin about not being invited to the work meeting but never mentioned race as a factor in that complaint. Deft.'s Ex.

---

[4]     Indeed plaintiff's Rule 56(a) Statement at ¶ 8 admits that plaintiff did not complain to Ursin that racial discrimination motivated the co-worker to omit plaintiff from the invitation list for the meeting in question. See also Ursin Aff., Deft.'s Ex. 2 at ¶¶ 10-14.

[5]     Plaintiff's CHRO complaint filed in February of 2000, does not mention any purported complaint to Ursin about disparate treatment based upon race nor does it include the retaliation claim. Deft.'s Ex. 3.

16 at pp. 92-93.  Mr. Ursin's affidavit confirms this.  Plaintiff's arguments now that he complained to Ursin about race discrimination in October of 1999 is nothing more than a disingenuous attempt to deflect the Court's attention from a record that inexorably demonstrates that summary judgment is appropriate.

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).  It cannot be disputed that without knowledge that an employee had exercised his Title VII right to oppose racial discrimination, an employer's determination to discharge that employee cannot be causally connected to the exercise of that Title VII right.  That is the case here.  A jury would not be entitled to ignore the plethora of evidence that Mr. Ursin was unaware of plaintiff's racial discrimination complaints where there is no evidence to the contrary.

Plaintiff is unable to establish his prima facie case of retaliation.  Further, plaintiff cannot rebut defendants' legitimate, non-discriminatory reasons for his discharge even if he could raise a prima facie case.

### V. PLAINTIFF HAS NOT ESTABLISHED AN EQUAL PROTECTION VIOLATION.

Plaintiff has offered nothing to salvage his selective treatment equal protection claim.  "In failing to establish disparate treatment under Title VII, plaintiff also necessarily fails to establish a violation of his equal protection rights."  Hogan v. State of Connecticut, Judicial Dept., 220 F. Supp. 2d at 122 (citing Silver v. City Univ. of New York, 947 F.2d 1021, 1023 (2d Cir. 1991)).

Plaintiff's "class of one" claim fails because he has failed to present evidence that "'[he was] intentionally treated differently from others similarly situated and that there [w]as no rational basis for the difference in treatment.'" African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 364 (2d Cir. 2002) citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

### VI.  PLAINTIFF DOES NOT ADDRESS OR REFUTE THE FACTS DEMONSTRATING THAT MR. URSIN ACTED AT ALL TIMES IN GOOD FAITH BASED ON THE INFORMATION AVAIALBLE TO HIM.

Plaintiff does not address Mr. Ursin's arguments that he is entitled to qualified immunity in any event on plaintiff's § 1983 claims. See Deft.'s Opening Brf. at pp. 18-22. As the Commission on Human Rights and Opportunities concluded, at the time of plaintiff's discharge, DMV acted reasonably and in accordance with all the information it then had available. Deft.'s Ex. 19 at p. 2. (Given the evidence submitted to DMV prior to plaintiff's termination, e.g., investigative reports, witness statements etc. it was reasonable to conclude at the time that plaintiff had engaged in harassing and threatening conduct).[6]

The law does not require that Mr. Ursin always be perfect in his role as a DMV employee. It provides for the exercise of discretion. For these reasons, Mr. Ursin renews his claim for qualified immunity that is fully briefed in the opening memorandum.

---

[6] An arbitrator did subsequently hear testimony from plaintiff's three "accusers" and found credibility problems. Significantly, however, the Arbitrator's standard is much different than that which appertains here – just cause under the collective bargaining agreement. It is also significant that the Commission on Human Rights and Opportunities concluded that the Arbitrator's decision did not impact in anyway its decision that no discriminatory animus infected the Defendants' decision to discharge the plaintiff in January of 2000. Deft.'s Ex. 19.

VII.   CONCLUSION

There is no evidence in the record that the decision to discharge the plaintiff in January of 2000 was infected with discriminatory or retaliatory animus.  Defendants are entitled to summary judgment on all of plaintiff's claims.

>                  DEFENDANT
>                  STATE OF CONNECTICUT
>                  DEPARTMENT OF MOTOR VEHICLE,
>                  ET AL.
>
>                  RICHARD BLUMENTHAL
>                  ATTORNEY GENERAL
>
> BY:   _____
>                  Edward F. Osswalt
>                  Assistant Attorney General
>                  Federal Bar No.:  ct15252
>                  55 Elm Street, P.O. Box 120
>                  Hartford, CT  06141-0120
>                  Tel:  (860) 808-5340
>                  Fax: (860) 808-5383
>                  E-Mail:Edward.Osswalt@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing Defendants' Reply Memorandum In Support of their Motion For Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 18th day of May, 2005, first class postage prepaid to:

Kimberly A. Graham, Esq.
621 Farmington Avenue
Hartford, CT  06105

>                  _____
>                  Edward F. Osswalt
>                  Assistant Attorney General